Please call the next case. S. 1508 Allen v. AON Corporation Good morning, counsel. Good morning, Your Honor. Please approach the podium and tell us your name and who you represent. Richard Burke, and I represent the firm of Freed & Wise, the appellant. And I'm Michael Morano, and I represent the Appellees. Thank you. And also with me, Your Honor, is Julie Miller. She's a young lawyer in our office, and I thought she could at least experience sitting in the chair with me. Will she be arguing, too, or just support you? No, she's not going to argue. She's supporting me. Doing a little mentoring. Excellent. Whenever you're ready, counsel. Thank you. Judge, this is, Your Honor, this is an appeal from a summary judgment motion. When I was a young lawyer, my first experience in front of the presiding judge in my district had a plaque on the front of his desk that said, Thou shalt not grant summary judgments. And it seemed odd to me because there is a rule for them, but I think this is probably a pretty good case why that admonition was on the front of his desk. I'd like to know exactly what your client's firm did. What did they actually do that they claimed they didn't get paid for? Well, they did two things, Judge. One has not been established in the record because there was no record, which is all of the work that had gone on in preparation of the Williamson case before it became a class action or Williamson became a member of the class action case. And that's discussed in the fee agreement of December 28, 2000. And then as part of the class action. This was all work that took place prior to the payment that was made, wasn't it? I'm sorry, Your Honor? The payment, yes. That's work that was done prior to the Lodestar payment here for 142 hours. That's the Lodestar payment. There was other work that was done in the case in addition to that that was not included in the Lodestar. That's what I'm asking. Right. What was done? You say you weren't paid for. Well, there was the preparation. There was, first of all, getting the plaintiff, establishing that the plaintiff would fit into this class action. Then there was the agreement, the negotiation for having this plaintiff become a member of the class, become a class representative. And unfortunately, none of that is in this record because there was no record. Now, in the class action case itself, there was, the Freedom Wise hours were added as part of the 142, I think it was 143.6 hours in the class action case. But I think the distinction here is because, you know, obviously the defendant is making this, quote, windfall argument, okay? Well, the wind was falling in many directions in this case, okay? And it was certainly falling in the direction of Joyce and Patchett as well. Now, when ---- Let me ask you quickly, standard of review, what's the standard of review here? De Novo. Ann, let me ask you another question. There seems to be a suggestion that your client was forced to file a motion for summary judgment. Can you explain that? Well, not really, okay? I wouldn't say forced. From what I can determine ---- Well, I mean, it's from what I can determine in the record, okay? And there's more, a blizzard of paper in this thing over attorney fee claims. I was not involved in the case. I wasn't involved in the case at that point. But from what I can determine, it looked as though many motions for allocation of attorney's fees had been filed, both in front of Judge Nowicki and then ultimately in front of Judge Hall. Multiple responses, multiple replies. There's probably, in this record, four of each. Ultimately, it looks like it gets up in front of Judge Hall, who probably, I could see as a matter of organization, wanted to wipe some of the slate clean and say, look, I want a petition. I want an answer. And then when we look at the orders, there's a decision that we're going to resolve this by summary judgment, and there's a summary judgment by the Joyce side, and there's a cross motion for summary judgment by the Fraden-Weiss side to sort of front the issue. Your follow-up on Justice Connors' question, in your brief, you said explicitly, I have to find it, the court ordered the parties to file a motion for summary judgment. And I couldn't quite find where the court ordered the parties to do that. Well, I tried to attach all of the orders. And if we look at C, I mean, the Bates numbering is quite poor here. It looks like 699. This is January 14th, 2010. So this is the order that looks like it's going to be right before all of this happens. And it reads, coming before the court, on Weiss's motion to enforce Williamson Council fee sharing agreement, and the court being advised of the premises hereby orders, Fraden-Weiss shall file a petition for attorney's fees on or before January 22nd. Respondents shall file a response. Fraden-Weiss shall file a response to the respondent's response. The respondent shall then file a reply in the matter set for status hearing March 15th. So I guess, candidly, I can't, in honesty, say that there's an order that says thou shalt file motions for summary judgment. Nevertheless, they did. I know, but the crux of your argument is that this was really so untoward, and the court should never decide a fee issue on a motion for summary judgment, which the court ordered the parties to file. And I can't find in the record where the court ordered the parties to do any such thing. Well, I didn't mean to be that strident in the matter, okay? And perhaps I was. That's how it came across. Like, gee, you know, this shouldn't be decided on summary judgment. Well, it shouldn't. Which the court ordered us to file. Well, it shouldn't be decided on summary judgment whether the court ordered it or filed it or not. But you did file a motion for summary judgment. Well, actually, it was a cross motion for summary judgment in response to the defendant's motion. It's still a motion as well. Sure, but ultimately the question is should it have been decided as a summary judgment, irrespective of how it got there. Even if you so you're saying that although you filed a motion for summary judgment, the court shouldn't. If the court had granted your motion, that would have been okay? I mean, then would it be okay for it to be decided on summary judgment? I think the question, I think there was an argument made by the Joyce side that there's a waiver. When parties each file motions for summary judgment, that is some waiver that the issue should be or can be or must be decided by summary judgment. That simply isn't the law. Summary judgment and whether or not there are no material facts and that the issue should be decided as a matter of law is clearly with the trial court itself. It can deny both of them. And it's the same here, that even if it comes up here. Well, listen, you admit the order doesn't set it out. Right. So what else do you have that suggests the court ordered it? Nothing. Or shoved it down your throat. Nothing. Okay. So proceed. Okay. So that takes us to the question of how this was done. Now, if we take the next step, which is what's the correct standard of review, the one argument is it's an abuse of discretion because it's a matter of attorney's fees, and the other argument is it's a motion for summary judgment on appeal and, therefore, it's de novo. There's no discretion exercised by this judge. This judge reached the conclusion on the Joyce motion for summary judgment that there was one way and one way only to allocate attorney's fees in a class action case, and that's the Agent Orange analysis that was done. That isn't the law. At the beginning of the Joyce's motion for summary judgment reads, Joyce and Patchett are not seeking summary judgment on the basis of any factual issue. They concede that there is disputed issues of fact as to whether there was a fee-sharing agreement for the parties, and then go on to say that in a class action such as this, fee awards must be based substantially on the services rendered by the attorneys who actually created and preserved the fund. That's the Agent Orange argument. That is not the law of this State. In fact, it's in the law anywhere. Can I ask you to focus on the letter agreement? Yes. What do you say it was? I believe you say it was a written agreement to engage in a joint venture. Yes. The other side says it was an ancillary agreement, which doesn't override Illinois law. Give us your argument on that. Well, that's at C-25. That one of the things that I think is the reason for why this summary judgment should not have been entered is that it unmoors itself from the facts. The facts in this case is that the parties, the three lawyers on one side and the three lawyers on the other side, the Daniels lawyer and the Williamson lawyers, entered into a written agreement. And that written agreement, we're not writing on a clean slate here, that written agreement was litigated in front of two Federal District Courts and an arbitration award in Georgia, which was affirmed by the Georgia Federal Court to interpret what it said. So we know what it said. And we know how it was to be construed. It said, paragraph one, Joyce, Frieden, Weiss, and Patchett have referred their client, Williamson County Agricultural Association, to KMS. That's the Kirby McInerney Group. For inclusion as a plaintiff in the pending class action style, Daniel versus Aon, referenced above, offer the commencement of a similar class action on Williamson's behalf. Now, the fee issue becomes how do they get paid for that, as opposed to how do they get paid for their load stock. And that was the subject of almost all of the litigation, which was paragraph three of that agreement. And it said, in consideration for the services performed by Williamson Council in connection with preparing the Williamson case, not in connection with preparing the class action case. That was the subject of all the litigation later. And in the event the court awards fees to plaintiffs' counsel in this action, Williamson Council collectively will receive 15% off the top of the fees. Now, I would argue that's a fee-sharing agreement in which the Williamson Council were paid, or set aside, $2.85 million off the top, without any consideration of what their relative contribution was to the class action case at all. Then the agreement goes on to state that they will be part of the executive committee. So if this is a referral contract, and under Illinois rules of professional conduct, even in referral contracts there must be some retention of responsibility. That is covered by paragraph five of the agreement, saying they will act as members of the executive committee and shall be responsible for assisting KMS in the action. And then all the other obligations that go along. Since you bring up the Illinois Supreme Court rules of professional conduct, what comments do you have concerning the fact that under the code of conduct, the division of fees have to be proportional to the services performed by each lawyer and the work actually done? Well, yes I do. That's part of the 1.5F, which I have a copy of here. Assuming that we agree with you that these letters do, in fact, comprise an agreement as to the 15% off the top, how does that flesh out what the code of professional conducts requirements of reasonableness in line with the actual amount of the work done? Well, I think part of the, and I don't mean to be skirting your issue, because I do want to get to the rule, but there is a logical inconsistency in this whole matter, which is a serious problem. For instance, the $2.85 million was awarded to these three firms presumably without any consideration of their proportional responsibilities. That was off the top. That's what off the top means. They have negotiated that essentially. They have saying in that letter agreement, we have referred our client and we accept responsibility. But that wasn't in the underlying action. You were before us on what happened as a result of the petition that Friedman Weiss filed in the Chancery Division of the Circuit Court and what happened to that. The other thing that you're talking about was something that was awarded by another court, wasn't it? I mean, the arbitration? Well, no. What had happened was that Mr. Joyce filed a motion seeking 45% of the entire fee for himself in the Chicago court. The New York lawyers moved immediately for declaratory judgment in the Federal District Court of New York. Everybody was sued. All the parties were brought into it because their argument, Joyce's argument was I didn't get enough money. I guess we can all agree on that much. What he wanted, what they wanted, is they wanted their Lodestar multiplier applied to the 85% of the fee. So they went in and said, no, we get not simply our 3,400 hours times our hourly rate, but we also get an enhancement of that by the multiplier. That's how they get, they say they get more. That's what became the subject of the litigation in that case. Do they get that second component of their compensation? The first component is essentially the referral fee. And the second component, that's the 15% off the top. And the second component is their participation in the work and the Lodestar unenhanced. And so that presumably people agreed in the arbitration. Frieden-Weiss filed an answer saying, well, we agree with the Kirby-McInerney plaintiffs in the declaratory judgment. We have no argument with you. So therefore, it was proceeded to the arbitration on that second component. What does the second element of compensation require under the agreement? And there the arbitrator and then the Georgia Federal Court said, no. All you get is your unenhanced Lodestar for the class action portion of the case, for that benefit to the class that you get. And everybody got paid on that. Joyce got paid his $3,400. Frieden-Weiss got paid their $143. And Patchett got paid his $463. So the Lodestar had been covered out of the 85% Danielson comportion, Daniels comportion of the fee. And I think that's the mistake that the trial court made. Because if the trial court wanted to apply proportionality to the 15%, the $2.85 million, it would then have to say, okay, if that's the law, and we don't agree it is, but even if that were the case, what would then have to happen is the court would have to take those relative hours and apply them to the $2.85 million. And under that scenario, if you do the math, which I did last night, it's $99,968 go to Frieden-Weiss. If the trial court was to follow its own logic, which it did not. Now, the argument then comes back. Joyce went to the Federal District Court and said, I get all my Lodestar with enhancement off the 85% plus the 15%, for which I have to prove nothing. He then comes to the circuit court in Cook County and says, oh no, that 85%, that 15%, the $2.85 million, it must now be apportioned according to our relative Lodestar from the class action case. And then apply that, which they don't even do, because as it turns out, Patchett and Joyce take the whole $2.85 million. So we have completely inconsistent applications of the same law to each component of this fee, which is what makes it. First of all, that is a violation of the law. It's a complete contrary interpretation of the contract itself, the agreement that the parties made. Now. So you say they're arguing on both sides. Yes, to maximize their fee. Well, counsel, what about the issue that they say that it must be based on substantive efforts of the trial relative to the common fund? Okay. That's the Agent Orange argument. Right. Well, the problem with the Agent Orange argument, look, courts have gone back and forth for years over Lodestar times multiplier or percentage of the fund. In fact, Illinois, in the Brundage case, says, look, you know, we see the merits and demerits of which there are numerous on each side to which one of these things to do. But we are going to allow the court, if it chooses, and in the exercise of its discretion, to do a percentage of the fee, which is what Judge Norwicky did in this case. Okay. But wasn't it your burden to come forward with showing what work was done by your firm? Well, this is a summary judgment. We never got to that point. Well, then. Because of the. Okay. Let's take that argument. Okay. Let's say that our burden was to prove a Lodestar, that we had done something to the benefit of the class, even though the $2.85 million wasn't paid for any of that. The $2.85 was completely unrelated to the fund of the class. But let's assume we did that. And that's the argument I made before. They still had 143 hours divided by $2.85. They could still get $100,000 on top of that. But the court ruled that they get nothing because they had already been paid out of the Lodestar component from the Daniels Group. Well, so had Frieden, Joyce, and Patchen. Okay. So we have so many inconsistencies in this outcome, okay, that we have the wrong. Oh, and by the way, the problem with the Agent Orange argument is Lodestar only. That was a Lodestar case under the Second Circuit Court of Appeals in 1987 that was pre-Brundage that said, we do Lodestar only and we are adopting the concepts of Grinnell I and Grinnell II. Okay. So. But that's not the law anymore. Now, the interesting thing about Agent Orange is it applies an analysis not only to the award of fees, but to the allocation of fees. And what it found wrong in Agent Orange was that they were investor lawyers. Okay. That's not the case here. But the problem with it is, is that if you say you can take a percentage of the fund, which is what Judge Nowicki did, then you can take 15% of the fund. Okay. So we never get to the, you know, the summary judgment has fronted the issue, saying we all have disagreements on the facts. By the way, I've completely lost track of my time here. I don't know what I've got left. And then it says that the law must be Lodestar when it's not the law of Illinois. Okay. It applies essentially an overruled case to do it. All right. It then divorces itself from the facts of the case, which is the $2.85 million was never awarded to any of these firms for their proportional share and benefit to the class. Okay. Well, I'd like to say something to the rebuttal. Can I do that, Your Honor? Thank you, Judge. May it please the Court. The simple issue that faced the ---- May I speak, counsel? I'm sorry. Michael Marano, Your Honors. The simple issue that the trial court was asked to decide in this case is whether the Fried and Weiss firm should receive from the common benefit fee awarded by the trial court a fee of $950,000. When they admitted, they took the position in their papers and their fee petition that they filed, that they weren't seeking the fee based on any work they did that enhanced, created, or preserved the common benefit fund that was generated in this case. It's undisputed. So in essence, there was no factual issue as to additional hours of work. It's in that petition. As I read it, it appears to me they've conceded, quote, unquote, only a small number of hours. And that's the fact. They conceded it because that was the reality. They were involved in the case for about a month. And then they dropped out until five years later, after the Joyce firm spent almost 4,000 hours with a load star of $1.8 million and settled the case, they showed up and said, we want $950,000. So this case doesn't have anything to do with what they did because they said, we're not seeking a fee based on what we did. We're seeking a fee based on a letter agreement that they say gives them a right to some fee. Well, the first problem with the letter agreement, it was an agreement between six different firms. It wasn't an agreement with Mr. Weiss alone and his firm. And it says nothing about what Mr. Weiss's share of the fee would be. It talks about a sharing of fees collectively among the six firms that wound up prosecuting the case. The letter agreement, we always took the position that the letter, regardless of what the lawyers say in a letter agreement, because it's a class action case, the law is absolutely clear. It hasn't changed at all. In a class action case, it's not a contingent fee case where the lawyers and the clients carve up the fee and decide who gets what. In a class action case, it's different. You create a pot of money for a bunch of unnamed class members, and then the court's responsible for taking that pot of money and dividing it up and paying out fees from the pot. So in Brundage, the case counsel mentions, the most recent Illinois Supreme Court case, the case makes absolutely clear. The lawyers that can be paid from that pot of money are the lawyers that create, preserve, or enhance the fund that the money's coming out of. You can't show up six years later and say I want money out of that pot simply because I was there five years earlier and there's some agreement here that I say gives me $950,000. You're saying the law under common fund distribution would prevail over any side agreements or understandings that the lawyers make? Absolutely. And it's all subject to court approval? Absolutely. It's all subject to the court because the court is, in effect, acting as a fiduciary for the class in those circumstances. Could there be an agreement that says we understand what the law of the common fund is, but in this case we agree that fees will be shared in a different way? The lawyers can make any fee agreement they want, but they have to bring that to the judge, and then the judge has to decide, okay, should I enforce this agreement or not? And the law is not only in common fund cases, but as mentioned under Rule 1.5, any sharing of fees has to be reasonable and it has to be based on the work you have done to create the pot. So what happened here, and that was our position in the trial court, we just said judge, whether you look at the common law of common fund cases or you look at the rule of professional conduct 1.5, it all comes down to the same issue. What work did you do that would entitle you to a share of these fees? And that's the issue, as you can see from the transcript, that the judge kept asking. What did you do? And they said, well, we're not talking about what we do. We're talking about some agreement that gives us a right to a fee, and counsel now suggests that there was a referral fee. Well, first off, there is no referral fee agreement in this case at all. The letter agreement specifically says if you get the 15 percent, if you find a client, Williamson, he is joined in the case, and more importantly, he is certified as a class representative, which is a major, major undertaking in any class action, is usually when the case is settled, is if a class is certified, and then the parties, as happened in this case, there was a lot of motion practice. But ultimately, when the case was certified and Mr. Williamson, or Williamson Agricultural became a class rep as a result of all this work Joyce and Patchett did, that's when the case settled, and that's what they got paid for. Counsel, is there any, did the Frieden-Weiss firm perform any other service other than the 100, the 120? Absolutely not, Your Honor. I don't know where counsel, first off, there's nothing in their pleadings that said they did any other work other than the 100 or 48 hours. Counsel suggests that negotiating a fee agreement is some work that they did on behalf of the class. That has nothing to do with the class. They can't come into a class action and say, we negotiated a side agreement with these lawyers who want to be paid for negotiating the side agreement. If that's what he's talking about, that's not work that has anything to do with the class. Counsel, what's the standard of review here? We believe the standard of review is abuse of discretion. The confusion comes in, and this is a fee petition. This isn't a complaint that's filed with a classic summary judgment motion type issue. This is a fee petition, and fee petitions are typically decided by the trial court on the filing of a petition by somebody with an affidavit, and the other side either objects to it. And if there's a fundamental issue about the reasonableness of the hours or those kinds of things, there might be an evidentiary hearing. This is a summary judgment. This is not a true hearing on a fee petition. I mean, this is a summary judgment rule. Well, the way this got confused because the Weiss firm filed, I think, three different motions initially. They filed one initially when this case was settled, and a few years later they filed another and then a third. So the judge finally said, stop. File a fee petition. This is a fee petition request. Did the judge force this to be a summary judgment? Absolutely not. There's nothing at all to suggest that at all. Did the firm voluntarily pursue the summary judgment on each side? Absolutely, and we talked about it, that that's the way this should be resolved because there was no dispute about I don't know what facts they're talking about are in dispute. There was no dispute about the work they did. The agreement says what it says. The letter agreement, which is what they relied on, it says what it says. There was no dispute. We had all this other ancillary litigation about what the letter agreement meant. That was all resolved. Summary judgments are standard of review as to know them. I understand that, but our position is on a fee petition. I mean, you could call any fee petition a summary judgment proceeding because it is. It's a summary proceeding to award fees to counsel, and basically the way it's handled is you file a fee petition. Somebody can object to it. If somebody says there's a need for a hearing, the court has a hearing. And that's what happened in this case. They never came before the trial court and said we have to have an evidentiary hearing. You can't rule on summary judgment in this case. That was my next question. Did anybody ask for an evidentiary hearing? I mean, that would have been, although it's a summary judgment and the parties chose to file that, it's in the court's discretion if she wanted to hold an evidentiary hearing. Sure. No, no, there wasn't because we filed it first because our position was the law is clear. You have to show what work you did. And you're coming into this court and saying we didn't do any work that really did anything. And so we're saying as a matter of law, the judge could run. They then file their own fee petition acknowledging, saying, oh, we believe as a matter of law, there's no disputed facts, we should get summary judgment, and the judge ruled on it. And that's the way it is. Under either standard, though, under de novo or either one, the law as set forth in Fiorito and Brundage is absolutely clear. You have to show in a class action, a common fund case, what work you did to either create, preserve, or enhance the fund. And if you don't show anything, you're not going to get paid out of that fund. And that was the problem with their case. Counsel, how do you respond to the argument that the written agreement was an engagement to being a joint venture? Well, we didn't view it as a joint venture. Is that language in the letter? No, not at all, Your Honor. Not at all. But even assuming it was, assuming it was a joint, you could characterize it as that. It doesn't change the fact that in a common fund class action fee case, you still have to come into the court and say, I did this work to enhance this benefit to the class. Therefore, out of the class fund, I should get a fee. So whether it's a joint venture, whether it's a referral, call it what you may. These private agreements, lawyers get all worked up about these private agreements. But the bottom line is, when you come in the court, you have to be able to demonstrate what you did. In this case, there's no question, Joyce and Patchett, as the trial judge specifically found, were instrumental in getting this case resolved and achieving the settlement. And they spent five years and almost 4,000 hours doing it. So we believe the trial court, whether under de novo or abuse of discretion standard, acted entirely appropriately in this case and that the decision should be affirmed. Thank you. Thank you, counsel. Thank you. Yes, there was a request for evidentiary hearing. It was denied. It's in the record. It's cited in the briefs. Secondly, the argument is that this common fund doctrine trumps the private fee sharing agreement. Well, if that were the case, then what is the justification for $2.85 million? No one established that they had any hours to support the $2.85 million. That was paid to this group off the top of that. It's not their fees. It's your fees. You're right. You keep talking about what the other people got. That wasn't before the court. The court was asked to determine whether or not you were entitled to what you were asking for. Well, okay. If you look at the two cases that I think are the ethical issue here, Holstein and Phillips v. Joyce. Let's start with Phillips v. Joyce. Phillips v. Joyce is a class action case. The doctrine in class action cases is keep your friends close and your enemies closer. You put people on the executive committee, you give them no work, you don't let them do any work. That's what was alleged there, and that was what was alleged by Phillips in Phillips v. Joyce. In Holstein, there were two counts. The first count had to do with the issue of a writing, and the second count had to do with the issue of a joint venture. The summary judgment was affirmed with respect to the writing and reversed with respect to the joint venture claim. Frieden-Weiss argument is they had a joint venture. The agreement said, by the way, it does say, for referring our client. Okay. So it clearly was a referral agreement. Okay. And secondly, it says shall be paid collectively. All right. So I think that the argument is that it's a joint venture agreement. All right. But the argument that somehow that there was this claim that you can't have any joint venture agreement has been clearly repudiated by the holding in Holstein because it reversed the trial court on that ground, that you can have a joint venture and you can't dismiss it by summary, you can't adjudicate it by summary judgment. And it sent it, it remanded it back for the determination of that issue. Counsel, let me, this is a basic question. Do you or do you not agree that the fee award has to be based on some kind of relative contribution? No. No. No. So you think that as long as you were, you had anything at all to do with the case at the beginning, it matters not whether you did anything else you were entitled to. No. I don't agree with that either. Well, what is your position? The position is what the parties did. There were two fees. There was a 15 percent fee which was off the top that was never based on relative contribution. So you're either entitled to a fee under the agreement or under established case law governing class action. Under either of those theories, tell me what entitles you to this fee. What entitles us to this fee is that the 2.8, remember this was a $19 million fee, not a $2.8 million fee. For everything everybody did in this case that benefited the class, they were paid money. And what did Fried and Weiss do that benefited the class? They got their 142 hours. They remained in the case. But they got paid for that. So did they. That's the point, okay? Is that that $2.85 million, and I'm not quite sure why this is so confusing, it says paid off the top. There was never any consideration of what Fried and Weiss, Patchett, or Joyce did to get the $2.8 million. It was paid off the top. And they got it. And they kept it. Thank you, Judge. Thank you. This matter will be taken under advisement of the court to adjourn.